**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

CRISTINA LLUCH-MERCADO,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

CIVIL NO. 22-1640 (HRV)

**OPINION AND ORDER**

## I.   Introduction

Plaintiff Cristina Lluch-Mercado (hereinafter "Plaintiff" or "Ms. Lluch-Mercado") seeks review of the decision of the Acting Commissioner of the Social Security Administration (hereinafter "Commissioner") denying her disability benefits under the Social Security Act ("the Act"). (Docket Nos. 1, 16). The Commissioner has filed her brief arguing that the decision should not be disturbed. (Docket No. 22). After careful consideration of the record, and for the reasons set forth below, the Commissioner's decision is AFFIRMED.

## II.   Legal Framework

### A. *Standard of Review*

Pursuant to 42 U.S.C. § 405(g), a reviewing Court must uphold the decision of the Commissioner as long as the Administrative Law Judge ("ALJ") applied the correct legal principles, and the determination is supported by substantial evidence. *Seavey v.*

*Barnhart*, 276 F.3d 1, 9 (1st Cir. 2001). The scope of my review is thus limited. I am tasked with determining whether the ALJ employed the proper legal standards and focused facts upon the proper quantum of evidence. *See Ward v. Comm'r of Soc. Sec.*, 211 F.3d 652, 655 (1st Cir. 2000); *see also Manso-Pizarro v. Sec'y of Health and Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).

To meet the evidentiary benchmark, more than a scintilla of evidence is required. *Purdy v. Berryhill*, 887 F.3d 7, 13 (1st Cir. 2018). But the threshold for evidentiary sufficiency is not particularly high; if after looking at the existing administrative record, the reviewing court is persuaded that it contains sufficient evidence to support the Commissioner's factual determinations, the decisions is bound to be upheld. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019)(internal citations omitted). Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record, could accept it as adequate to support [the] conclusion." *Irlanda-Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). The ALJ's decision must be reversed, however, if it was arrived at "by ignoring evidence, misapplying law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

### B. The Five-Step Sequential Evaluation Process

Under the Act, a person is disabled if she is unable to do her prior work and, "considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d).

The Act sets forth a five-step inquiry to determine whether a person is disabled. *See* 20 C.F.R. § 404.1520(a)(4). The steps must be followed in order, and if a person is determined not to be disabled at any step, the inquiry stops. *Id*. Step one asks whether the plaintiff is currently "doing substantial gainful activity." 20 C.F.R.

§ 404.1520(a)(4)(I). If she is, she is not disabled under the Act. *Id.* At step two, it is determined whether the plaintiff has a physical or mental impairment, or combination of impairments, that is severe and meets the Act's duration requirements. 20 C.F.R. § 404.1520(a)(4)(ii). The plaintiff bears the burden of proof as to the first two steps. Step three considers the medical severity of the plaintiff's impairments. 20 C.F.R. § 404.1520(a)(4)(iii). If, at this step, the plaintiff is determined to have an impairment that meets or equals an impairment listed in 20 C.F.R. pt. 404, subpt. P., app. 1, and meets the duration requirements, she is disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If, on the other hand, the plaintiff is not determined to be disabled at step three, her residual functional capacity ("RFC") is assessed. 20 C.F.R. § 404.1520(a)(4), (e). Once the ALJ determines the RFC, the inquiry proceeds to step four, which compares the plaintiff's RFC to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the plaintiff can still do her past relevant work, she is not disabled. *Id.* Finally, at step five, the plaintiff's RFC is considered alongside her "age, education, and work experience to see if [she] can make an adjustment to other work." 20 C.F.R. § 404.1520(a)(4)(v). If the plaintiff can make an adjustment to other work, she is not disabled; if she cannot, she is disabled. *Id.*

### III. Background and Procedural History[1]

On January 29, 2019, Plaintiff applied for Child Insurance Benefits ("CIB"). Tr. 431-437. The onset date for her alleged disability was January 1, 1998, when she became afflicted with, among other conditions, bipolar II disorder, myotonic dystrophy, and

---

[1] The background details are outlined from the information found in the Social Security Transcript (hereinafter "Tr."), which was was filed at Docket No. 12 on April 7, 2023.

attention deficit disorder. When the Social Security Administration ("SSA") initially denied her claim for benefits, she sought reconsideration. Tr. 270. After reconsideration was denied, Plaintiff requested in writing a hearing before an ALJ. Tr. 277-282. The hearing was held on August 9, 2021. Tr. 37-77. At the hearing, the ALJ received the testimonies of the following witnesses: Dr. Carlos Aviles, Psychiatrist, Ms. Lluch-Mercado herself, her father, Mr. Jose Lluch, and impartial vocational expert Alina Kurtanich. *Id.* The ALJ also received and reviewed documentary evidence, including medical records.

On September 29, 2021, the ALJ issued her written decision concluding that plaintiff was not disabled within the meaning of the Act. Tr. 16-31. The ALJ specifically found that prior to attaining age 22[2], Plaintiff had not engaged in substantial gainful activity (Step One) which was undisputed, and that she suffered from the following severe impairments: attention deficit disorder (ADHD) and oppositional defiant disorder (ODD)(Step Two). Tr. 24. According to the ALJ, while Plaintiff was treated for other non-severe medical conditions such as myotonic muscular dystrophy, borderline personality disorder, major depression, and bipolar disorder, these only imposed minimal functional limitations on Plaintiff during the relevant period. Tr. 24-25.

At Step Three of the sequential evaluation process, Plaintiff was found not to have an impairment or combination of impairments meeting—or medically equaling—the severity of the ones listed in 20 C.F.R. Part 404, Subp. P., App. 1. For this finding, the

---

[2] This age is important because the Plaintiff's application was actually for CIB. Pursuant to 42 U.S.C. § 402(d)(1)(B)(ii) and 20 C.F.R. § 404.350(a)(5), a person is entitled to CIB if she was disabled prior to age 22. My analysis is thus focused on this relevant period.

ALJ outlined the reasons why Plaintiff's alleged mental impairments did not reach the required level of severity. The ALJ considered the criteria of listing 12.04. Tr. 25-26. Pursuant to "paragraph B", in order to meet the severity criteria, the mental impairments had to result in either one extreme limitation or two marked limitations in a broad area of functioning.[3]

After considering the testimonies presented at the hearing, and Plaintiff's "Adult Function Report", as well as other evidence in the record, the ALJ found that Plaintiff had only mild and moderate limitations in the functional areas of: (1) understanding, remembering and applying information (mild); (2) interacting with others (moderate), (3) concentration, persistence or maintaining pace (moderate); and (4) adapting or managing oneself (moderate). *Id.* Despite these limitations, Plaintiff was found to be able to read, drive and shop personally at the store despite her poor memory. In the area of interacting with others, she was described as cooperative by medical providers and reported getting along with her family. As for concentration, she completed high school and one year in college. And in the area of managing herself, Plaintiff was found to be capable of preparing simple meals and, again, shop at the store by herself. Therefore, the ALJ concluded that Plaintiff did not satisfy the "paragraph B" criteria for having two marked limitations or one extreme limitation. She did not satisfy "paragraph C" criteria either.[4]

---

[3] "An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis." Tr. at 25 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04 ¶ B).

[4] 20 C.F.R. Pt. 404, Subpt. P, App 1 § 12.04 ¶ C: the mental disorder must be "serious and persistent" in that there is a medically documented history of the existence of the disorder for a period of at least two years, and there is evidence of both:

As she was required to do at this step, the ALJ then determined the RFC of Ms. Lluch-Mercado, and concluded that prior to attaining age 22, she could

> perform a full range of work at all exertional levels but with the following nonexertional limitations: she can understand, remember and carryout instructions: is able to perform simple, routine and repetitive tasks; use judgment: is able to perform simple work-related decisions; is able to interact with supervisors and coworkers occasionally; but is never able to interact with the public; Dealing with changes in work setting: is able to make simple work-related decisions.

Tr. 26-27.

Since Plaintiff did not have prior relevant work (Step Four), her RFC could not be compared to anything. Then, at Step 5, the ALJ found that considering her age, education, limited work experience and her RFC, there were jobs that existed in significant numbers in the national economy she could perform. Accepting the testimony of vocational expert Alina Kurtanich, the ALJ concluded that Ms. Lluch-Mercado could perform occupations such as laundry worker, marker, and hospital cleaner. Tr. 30. In sum, the ALJ determined that prior to attaining age 22, Plaintiff was not under a disability. *Id*.

On October 27, 2022, the Commissioner's decision became final when the Appeals Council affirmed the ALJ's decision. Tr. 1-6. On December 24, 2022, Plaintiff filed her Social Security Complaint in this Court. (Docket No. 1). As previously stated, the Social

---

1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder; and
2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life.

Security Transcript was filed on April 7, 2023, and the parties have filed their corresponding briefs (Docket Nos. 16, 22).

## IV. Analysis

In arguing that the decision of the Commissioner should be reversed for failure to apply correct legal standards and for not being supported by substantial evidence, Plaintiff faults the ALJ for the weight that she gave the opinions of threating physicians, particularly that of Dr. Carlos Aviles, who testified at the hearing.[5] Plaintiff also briefly argues that the ALJ made an erroneous determination as to her physical RFC. According to Plaintiff, "[t]here is no reading of the evidence in this case" supporting the conclusion that Ms. Lluch-Mercado can perform a full range of work. (Docket No. 16 at 17).

### A. Dr. Carlos Aviles

Plaintiff spends most of her brief outlining the testimony of Dr. Aviles for the proposition that she likely suffered from bipolar disorder in her teenage years and that said condition meet the severity criteria in 12.04. Plaintiff maintains that even though the ALJ admittedly gave partial weight to the opinion of Dr. Aviles, she "evidently" gave "little to no weight" to it. (Docket No. 16 at 15-16). It was error also, Plaintiff avers, for the ALJ to conclude that some of Dr. Aviles' opinions were based on what her father reported contemporaneously to the disability determination process. In that respect, Plaintiff notes that "Dr. Aviles's testimony came from his [treatment of] plaintiff during her teenage years." (*Id.* at 16).

---

[5] I did not find in the record, for the relevant period, any information from any treating physicians that added anything to the decision under my review. For instance, Dr. Liz Tejada treated plaintiff during the relevant period. Exhibit 3F, Tr. 533. Her certification contains neither a diagnosis nor objective medical evidence.

It should be noted that close to two decades had elapsed between the time Dr. Aviles personally treated Plaintiff and the time he saw her again for purposes of the application for CIB.  And even giving his testimony the benefit of the doubt, Dr. Aviles, at most personally met with Ms. Lluch-Mercado seven (7) times when she was between the ages of 14 and 18.[6]  Even Plaintiff candidly admits that this case is challenging given the destruction of medical records and the passage of time from the onset date to the disability determination.  Yet, Plaintiff argues that this was all the more reason to give greater weight to the testimonies and certifications of treating physicians like Dr. Aviles.

The Commissioner ripostes that in reaching her conclusions, "the ALJ was required to evaluate the persuasiveness of 'any statements about what [plaintiff could] still do that [were] provided by medical sources.'" (Docket No. 22 at 4-5)(quoting 20 C.F.R. § 404.1545(a)(3) and 20 C.F.R. § 404.1520c)).  And that there are several reasons why the ALJ's rationale for partially discounting Dr. Aviles' opinions was correct.[7]  In

---

[6] Answering questions from counsel, Dr. Aviles states: "I know Cristina when she was a teenager, perhaps she was about 14 years old, I personally know her parents, but I know her in the capacity of patient because her parents brought her to the office to treat her in her teenage years, I saw her about four, five, six times maybe during those years. Tr. 46. Later, answering questions from the ALJ, he stated: "I saw her like– yes, approximately, no like six times, seven times, more or less, your honor . . . . Yes, four times, more or less, four, five, six times, more or less like that." Tr. 51.

[7] The Commissioner contends that there is "an alternate reason the Court can uphold the ALJ's decision, at least with respect to the opinion Dr. Aviles gave at the hearing: his statement that plaintiff met the criteria of the impairment listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04 is reserved to the Acting Commissioner." Docket No. 22 at 8 (citing 20 C.F.R. § 404.1520b(c)(3)(iv)). According to the Commissioner, the ALJ should not have provided an analysis about how she considered Dr. Aviles' opinions in that regard because it being a matter reserved to the Commissioner, said analysis would have been regarded as "neither valuable nor persuasive" pursuant to 20 C.F.R. § 404.1520b(c) and POMS DI 24503.040(E)(2). While conceding that this is post hoc rationalization, the Commissioner cites caselaw for the proposition that post hoc rationalizations are appropriate in a situation like the case at bar for there is no point in remanding the case.  In other words, the same outcome should be expected when it is assumed that the ALJ will correctly apply the law. *See Ward v. Comm'r of Soc. Sec.*, 211 F.3d 652, 656 (1st Cir. 2000)(remand not essential if it will amount to no more than an empty exercise).  I see the logic and soundness of the Commissioner's contention.  Yet, because the plaintiff relied on the ALJ's written decision

fact, the Commissioner offers five reasons for upholding the ALJ's rationale. And she claims that Plaintiff has only challenged one of them. First, that the ALJ was correct in her finding that there really was no objective medical evidence supporting the opinion of Dr. Aviles, particularly considering the passage of time since he treated Plaintiff. Second, that the ALJ got it right because some of the opinions as to Plaintiff's limitations were inconsistent with the fact that she graduated from high school and attended college. Third, that the large gaps in treatment justified partially giving less weight to Dr. Aviles' opinions. Fourth, that with the mental health condition Dr. Aviles opined Plaintiff had, it would have been expected to see episodes of decompensation requiring psychiatric hospitalizations or emergency room visits. And fifth, that the partial weight given to the opinions of Dr. Aviles was not simply due to the fact that they were based on the father's subjective reports, but on the absence of objective medical evidence. After all, Dr. Aviles based his conclusion that Plaintiff had "many problems" on her conversations with her. Tr. 53-54. In any event, the Commissioner argues that even without this finding—the only one directly challenged by the Plaintiff—there are four other reasons supporting the ALJ's decision to discount Dr. Aviles' opinion; and those, the Plaintiff has not challenged. I agree.

In determining both whether Plaintiff had met her burden and the persuasiveness of the evidence put forth, the ALJ was entitled to certainly consider how long it had been since Dr. Aviles interacted with and treated Ms. Lluch-Mercado. Moreover, there seems to be a complete dearth of objective medical evidence as that term is defined in 20 C.F.R.

---

and reasoning to craft her arguments on appeal, I will simply address the issues that are squarely before me. In the end, the conclusion is the same; the ALJ's decision should be affirmed.

§ 404.1502(f) and (g)[8]; the witness simply based his opinions on what was reported to him by the Plaintiff on the few occasions during the relevant period that he saw her in his office.

The ALJ was also justified in giving less weight to the opinion of Dr. Aviles when his opinion as to Plaintiff's limitations was contradicted by other objective evidence on record such as the fact that Ms. Lluch-Mercado completed high school despite her impairments, and even attended college. Further, while she was described by the doctor as a "very defiant girl, [who] would question authority all the time, and was very headstrong" Tr. 50, the fact of the matter is that Dr. Aviles testified he did not have any issues with Plaintiff at the office and that his relationship with her "was not problematic." *Id.* This is consistent with the ALJ's finding as to "interacting with others", where she found that Plaintiff was cooperative with treatment providers. Some of these internal inconsistencies within the testimony, certainly allowed for the ALJ to be justified in giving less weight to Dr. Aviles' opinion. Similarly, the large gaps in treatment and lack of hospitalizations supported the conclusion that Plaintiff's limitations did not meet the severity requirements, contrary to what Dr. Aviles' opined.

In the end, in addition to gaps in treatment, destruction of records, limited contact and lack of objective medical evidence, among others, Dr. Aviles' opinion as to the bipolar

---

[8] "Objective medical evidence means signs, laboratory findings, or both." 20 C.F.R. § 404.1502(f). Signs, in turn, "means one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from your statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception, and must also be shown by observable facts that can be medically described and evaluated." 20 C.F.R. § 404.1502(g).

disorder condition and the severity of the limitations it imposed on Plaintiff, was equivocal at best. When asked by Plaintiff's counsel, this is what the doctor said:

> When, when I saw her for the first time[,] **I thought** that she could have ADHD, but I remember that the last two sessions we had, **I was seriously considering** that she suffered from bipolar disorder. That condition runs in her family, but, I mean, the lack of response to treatment for attention deficit, when this was not adequate, and these episodes of irritability, hostility, impulsivity, alternating with episodes of guilt after what had happened and sadness and locking herself in the room without going out and crying stated that she **probably** had a bipolar disorder type one.

Tr. 48 (emphasis ours). Later, when asked by the ALJ, the witness responded:

> No, at first it was attention deficit disorder, at the end, I started treating her **like** bipolar disorder, that is why she started taking anti-psychotics, which are mood stabilizers, which in reality– they could be used for attention deficit, but the purpose was not that, the purpose was to try to stabilize the changes in mood, from agitation, irritability and impulsiveness versus depression, anhedonia, lack of interest in doing things.

Tr. 52. Thus, I find he ALJ did not err in giving his opinion partial weight.

### B. *Plaintiff's Physical RFC*

Plaintiff takes exception with the ALJ's finding that she could "perform a full range of work at all exertional levels." However, the Plaintiff failed to develop this argument. Accordingly, I deem it waived. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990)("[I]ssues averted in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.")

### V. Conclusion

For the reasons outlined above, I find that Plaintiff has failed to demonstrate that the Commissioner's decision is not supported by substantial evidence or that incorrect legal principles were applied. Accordingly, the Commissioner's decision to deny CIB to Plaintiff is hereby AFFIRMED.

**IT IS SO ORDERED**

In San Juan, Puerto Rico this 6th day of December, 2023.

<u>S/Héctor L. Ramos-Vega</u>
HÉCTOR L. RAMOS-VEGA
UNITED STATES MAGISTRATE JUDGE